UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Central Livestock Association, Inc.,
and Genex Cooperative, Inc.,

    Plaintiffs,

v.                                                                Civil No. 08-155 (JNE/JJG)
                                                              ORDER
R & J Dairy, Richard E. Millner,
and James L. Nickeson,

    Defendants.

Jonathan M. Bye, Esq., Lindquist & Vennum, PLLP, appeared for Plaintiffs Central Livestock Association, Inc., and Genex Cooperative, Inc.

Mark R. Hanson, Esq., Nilles Law Firm, appeared for Defendant James L. Nickeson.

Jack Y. Perry, Esq., Briggs & Morgan, PA, appeared for Defendant Richard E. Millner.

Defendant R & J Dairy did not appear.

Plaintiffs Central Livestock Association, Inc. (Central), and Genex Cooperative, Inc. (Genex), (collectively, Plaintiffs) bring this action against Defendants Richard E. Millner, James L. Nickeson, and R & J Dairy[1] (R & J). Plaintiffs claim that Defendants sold or transferred to others cattle that Plaintiffs had contractually entrusted to Defendants' care and that Defendants kept the resulting proceeds or otherwise failed to compensate Plaintiffs. The Complaint states claims for breach of contract, unjust enrichment, conversion, and account stated. The case is before the Court on Plaintiffs' Motion for Entry of Default Judgment Against R & J Dairy and

---

[1]    James Nickeson, Richard Millner, and Allan Nickeson operated the O'Dakota Heifers partnership until 2001, at which time Allan Nickeson dissociated and Millner and James Nickeson created R & J. R & J appears to have at times also operated under the name O'Dakota Heifers.

1

Plaintiffs' motion for summary judgment against Millner and Nickeson. For the reasons stated below, the Court grants the motions.

I. BACKGROUND

The basic facts giving rise to this action are undisputed. Nickeson and Millner are South Dakota residents and are or were the sole and equal partners in R & J, a South Dakota general partnership. Nickeson and Millner never executed a written partnership agreement. However, they agreed that Millner would handle the management and administration of R & J's operations. Nickeson provided financial backing, forages, and the use of feed lot facilities.

R & J entered into three contracts, called livestock feeding agreements (LFAs), with Plaintiffs. Genex and R & J, via signatures of Millner and Nickeson, entered into the first such agreement on February 26, 2001. On September 7, 2001, Genex and R & J, again via signatures of Millner and Nickeson, entered into a second LFA.[2] Central and R & J, via signatures of Millner and Nickeson, entered into a third LFA on July 2, 2002. The September 2001 LFA states that it shall be governed by North Dakota law, and the other LFAs provide that South Dakota law shall govern. The LFAs are identical in most other regards.

Pursuant to the LFAs, R & J agreed to feed and care for Plaintiffs' livestock, which were to remain at all times the property of Plaintiffs. The LFAs stated that, when Plaintiffs sold their livestock, Plaintiffs would retain certain costs and fees out of the sale proceeds and that R & J would be entitled to any remaining sums. In the event that the costs and fees due Plaintiffs exceeded the sale price of the livestock, the LFAs required R & J to pay Plaintiffs the difference. The LFAs indicated that R & J became responsible for costs and fees due to Plaintiffs when

---

[2] Plaintiffs assert, and Defendants do not dispute, that the second LFA between Genex and R & J was meant to supersede the first LFA.

livestock were accepted from Plaintiffs, and they stated that R & J "shall bear the risk of loss of . . . the Livestock, including but not limited to losses resulting from disease, injury, loss, theft, death, or mysterious disappearance." In addition, the LFAs forbade R & J from relocating livestock without Plaintiffs' prior written consent; granted Plaintiffs rights to access, inspect, and remove their livestock from R & J's possession at any time and for any reason; reserved for Plaintiffs all decisions about marketing and sale of livestock; required that any amendments, modifications, and waivers of rights be in writing; and stated that delay or failure of a party to exercise a right under the LFAs did not constitute waiver of that party's ability to exercise that right in the future. The LFAs provided for an award of costs and attorney fees to the prevailing party in any action between Plaintiffs and R & J to enforce the LFAs or for an award of damages for breach of the LFAs.

Plaintiffs' records indicate that Central delivered 1,027 heifers to R & J, with the last delivery of 3 heifers occurring on September 10, 2002. Similarly, Plaintiffs' records state that Genex delivered 3,507 heifers to R & J and that the last 46 heifers were delivered on June 3, 2003.[3]

The parties agree that Millner, in violation of the LFAs, transferred Plaintiffs' cattle from R & J's premises to other dairies without Plaintiffs' prior written consent. The parties further agree that, in many instances, Plaintiffs did not receive payment in connection with these transfers as required by the LFAs. Millner and Nickeson had financial interests in many of the dairies that received cattle from R & J in violation of the LFAs. The largest such recipient

---

[3] In his deposition, Ray Douglas Wilson, the Chief Operating Officer of Genex and the Chief Executive Officer of Central and Genex's parent company, made several equivocal statements suggesting that Plaintiffs may have delivered some unknown number of heifers to R & J at some unknown time after June 3, 2003. In any event, there is no indication that Plaintiffs seek damages in the present action in connection with any cattle delivered to R & J after that date.

appears to have been MCC Dairy, a dairy in which both Nickeson and Millner had financial interests.

Millner does not oppose Plaintiffs' motion for summary judgment. Because Nickeson and Millner cannot agree on a course of action, R & J is unable to act and has not answered. Default has been entered against R & J.[4] Nickeson alone contests Plaintiffs' motions.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Summary judgment against Nickeson

Plaintiffs argue that the evidence establishes that R & J is liable for breach of the LFAs and that, by operation of law, both Nickeson and Millner are jointly and severally liable for

---

[4] R & J is currently the subject of a partnership dissolution action pending in South Dakota state court.

4

R & J's obligations.[5] *See* N.D. Cent. Code § 45-15-06(1) (2007) ("[A]ll partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law."); S.D. Codified Laws § 48-7A-306(a) (2004) (same). Nickeson acknowledges that R & J's obligations under the LFAs were not fulfilled but contends that, for various reasons, he is not liable for the debts of Millner or R & J.

       *1.      Ability of Nickeson to contest validity of partnership obligations*

As a threshold matter, Plaintiffs argue that Nickeson, as an individual partner in R & J, may not contest the validity of partnership obligations. Plaintiffs contend that such defenses belong solely to the partnership, which has defaulted. In support of their argument, Plaintiffs cite a single case applying New Hampshire law. *See Storch Eng'rs v. D & K Land Developers*, 593 A.2d 245, 247 (N.H. 1991) ("The nonexistence of a debt owed by the partnership is a defense belonging to the partnership itself.").

The Court disagrees. Both North Dakota and South Dakota law provide that "[a]n action may be brought against the partnership and . . . any or all of the partners in the same action or in separate actions," S.D. Codified Laws § 48-7A-307(b) (2004); *see* N.D. Cent. Code § 45-15-07(2) (2007), which suggests that partners may assert the rights of the partnership should they be sued independently of the partnership. Moreover, both North Dakota and South Dakota law also

---

[5]     Both North Dakota and South Dakota have adopted the Uniform Partnership Act. No party identifies any material differences in the two states' laws on partnership.

    In his memorandum filed in connection with Plaintiffs' motion for default judgment, Nickeson concedes that "R&J Dairy is . . . a partnership with no assets." *Cf.* N.D. Cent. Code § 45-15-07(4) (2007)("A judgment creditor of a partner may not levy execution against the assets of the partner to satisfy a judgment based on a claim against the partnership unless . . . [a] court grants permission to the judgment creditor to levy execution against the assets of a partner based on a finding that partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers . . ."); S.D. Codified Laws § 48-7A-307(d) (2004) (same).

provide that a partnership is an entity distinct from its partners, N.D. Cent. Code § 45-14-01(1) (2007); S.D. Codified Laws § 48-7A-201(a) (2004), and that a judgment against the partnership is not by itself a judgment against a partner, N.D. Cent. Code § 45-15-07(3); S.D. Codified Laws § 48-7A-307(c). Accordingly, Nickeson appears to be in the position of a third-party defendant, and, under Rule 14(a)(2)(C) of the Federal Rules of Civil Procedure, a third-party defendant "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." While the Court's conclusion might be different had R & J actively but unsuccessfully contested Plaintiffs' claims, *cf. Sunseri v. Proctor*, 461 F. Supp. 2d 551, 561-67 (E.D. Mich. 2006) (discussing due process issues and application of the doctrine of collateral estoppel in an action against general partners following full and fair adjudication of related claims against the partnership); Restatement (Second) of Judgments § 60(1)(b)(ii) (1982) (stating that a judgment against a partner on a partnership obligation "renders the property of the partnership subject to execution to satisfy the judgment but is not otherwise binding on a partner who was not a party to the action unless he controlled or participated in controlling the defense of the action, or was given notice of an opportunity to defend the action"), the Court permits Nickeson to raise arguments challenging the validity of R & J's obligations to Plaintiffs.

  *2. Millner's authority*

  Nickeson argues that issues of fact remain as to whether Millner had actual authority to transfer cattle in violation of the LFAs and as to whether Plaintiffs knew Millner lacked authority to act as he did. Both North Dakota and South Dakota law provide as follows:

> Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person

with whom the partner was dealing knew or had received a notification that the partner lacked authority.

N.D. Cent. Code § 45-15-01(1) (2007); S.D. Codified Laws § 48-7A-301(1) (2004).

Nickeson admits that Millner had general authority to manage the day-to-day affairs of R & J, but he appears to argue that Millner's actions in violation of the LFAs were necessarily made without authority because his actions did not comply with the LFAs and that Plaintiffs were aware that Millner's actions were taken without authority because they were aware of the terms of the LFAs. Nickeson cites no authority for the proposition that a partner lacks either actual or apparent authority to take actions in violation of a partnership's contracts. *Cf.* N.D. Cent. Code § 45-15-05(1) (2007) ("A partnership is liable for loss or injury caused to a person . . . as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership."); S.D. Codified Laws § 48-7A-305(a) (2004) (same).

More importantly, whether Millner's actions in disposing of Plaintiffs' cattle and in failing to remit money to Plaintiffs were within his actual or apparent authority as a partner in R & J is irrelevant to Plaintiffs' claims. Both North Dakota and South Dakota law provide that "[i]f, in the course of the partnership's business or while acting with authority of the partnership, a partner receives or causes the partnership to receive money or property of a person not a partner, and the money or property is misapplied by a partner, the partnership is liable for the loss." N.D. Cent. Code § 45-15-05(2); S.D. Codified Laws § 48-7A-305(b). Nickeson, in his memorandum in opposition to summary judgment, states that he partnered with Millner to form R & J "to raise and sell dairy heifers for profit." The evidence establishes that R & J received cattle from Plaintiffs in the ordinary course of partnership business. Regardless of Millner's

7

authority, R & J failed to satisfy its obligations to Plaintiffs, and R & J, and consequently Nickeson, is liable for Millner's misapplication of Plaintiffs' cattle and any resulting proceeds.

3. *Estoppel*

Nickeson argues that genuine issues of material fact exist as to whether Plaintiffs are estopped from enforcing the LFAs against him and his interest in R & J. Under North Dakota law, "[w]hen a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." N.D. Cent. Code § 31-11-06 (1996); *see also Berg v. Lien*, 522 N.W.2d 455, 456 (N.D. 1994); *Farmers Coop. Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 813 (N.D. 1976). Similarly, under South Dakota law, equitable estoppel is applicable under the following circumstances:

> [F]alse representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury.

*Cromwell v. Hosbrook*, 134 N.W.2d 777, 780-81 (S.D. 1965); *see also Cleveland v. Tinaglia*, 582 N.W.2d 720, 727 (S.D. 1998) (quoting *Cromwell*); *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 866 (S.D. 1993) ("An essential element of equitable estoppel is fraud. There must be some intended deception in the conduct or declaration of the party to be estopped or such gross negligence on his part as to amount to constructive fraud.").

Even if it is assumed, as Nickeson contends, that Plaintiffs acquiesced to late payments from R & J and to certain other breaches of the LFAs, Nickeson fails to identify evidence that Plaintiffs, by any act or omission, indicated that they would entirely forgo amounts due under the

LFAs.  Nor does Nickeson identify evidence that Plaintiffs intended to cause Nickeson or Millner to believe that they would forgo amounts due under the LFAs.  To the contrary, the evidence suggests that Plaintiffs expressed concern about the high amounts owed to them by R & J and indicated, according to Millner's deposition, that they wanted R & J to keep the accounts "fairly current."  While Nickeson claims that *Millner* falsely informed him that Plaintiffs were being paid, any such statement by Millner is not a representation *by Plaintiffs* such that they would be estopped from claiming the contrary.  Similarly, any failure by Millner to inform Nickeson of his actions or of developments relevant to the partnership might entitle Nickeson to recover damages from Millner, *see In re Estate of Thomas*, 532 N.W.2d 676, 683 (N.D. 1995) ("[The] relationship between partners is confidential and fiduciary; they are trustees for each other, and they bear the obligation of the utmost good faith and integrity in their dealings with one another."); *Von Sternberg v. Caffee*, 692 N.W.2d 549, 554 (S.D. 2005) ("Each partner owes a fiduciary duty to the other partners."), but would not prevent Plaintiffs from seeking recovery from R & J or Nickeson, *cf. Clients' Sec. Fund v. Grandeau*, 526 N.E.2d 270, 273 (N.Y. 1988) ("Traditional principles of partnership law dictate that . . . any member of a partnership may be liable for a conversion of property committed by a member of the firm, even where the other members of the firm had no knowledge of the offending partner's action.").

In connection with his estoppel argument, Nickeson argues that Plaintiffs may not seek payment from him under the LFAs because Plaintiffs were "required under the LFA[s] to step in and prevent such transactions [that violated the LFAs]" once they learned that such transactions were taking place.  While the LFAs granted Plaintiffs "[a]s the owner[s] of the Livestock, . . . the right to inspect . . . and to remove the Livestock from the Feed Lots at any time," Nickeson identifies no reason why Plaintiffs were obligated to exercise this discretionary authority on

9

Nickeson's behalf. *Cf. Hecksel v. Cent. Livestock Association*, No. 03-2604, 2005 WL 2406032, at *5 (D. Minn. Sept. 6, 2005) (construing an LFA to which Central was a party and stating that the LFA permitted Central to perform inspections of its livestock but did not require Central to do so). Under certain circumstances, a fiduciary duty may arise out of an otherwise ordinary contractual relationship. *See Bourgois v. Mont.-Dakota Utils. Co.*, 466 N.W.2d 813, 819 (N.D. 1991) ("We have identified a fiduciary or confidential relationship as 'something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise.' . . . A fiduciary or confidential or other special relationship does not ordinarily exist when businesspersons deal with each other at arm's length." (citation omitted)); *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 500 (S.D. 1990) ("[F]iduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other."). However, while Plaintiffs may have been obligated to look out for R & J's interests in other regards, the Court cannot conclude that Plaintiffs had a duty to protect Nickeson from the actions of his own partner—a standard higher than that to which Nickeson held himself. *See Hecksel*, 2005 WL 2406032, at *6 (indicating that Central may have had a duty to market their cattle appropriately and to conduct inspections where the cattle delivered by Central suffered widespread health problems).

    *4.  Modification of the LFAs or creation of a new contract*

  Nickeson argues that issues of fact exist as to whether Millner and Plaintiffs modified the LFAs or entered into a new and separate contract via an executed oral agreement. *See* N.D. Cent. Code § 9-09-06 (2006) ("A contract in writing may be altered by a contract in writing or

by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which that party was not obligated by the original contract to incur."); S.D. Codified Laws § 53-8-7 (2004) ("A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."). Nickeson speculates that R & J's actions breaching the LFAs were performance in accordance with some new agreement with Plaintiffs, but Nickeson fails to adequately support his argument with evidence, citing instead deposition testimony indicating that Millner attempted to work with Plaintiffs to establish a payment plan for R& J's debts. He further fails to identify any cognizable detriment incurred by either himself or R & J because, under Nickeson's "new contract" theory, R & J gained freedom from certain contractual restrictions and was required to pay only the amounts due under the terms of the original LFAs. *See Mitchell v. Barnes*, 354 N.W.2d 680, 682 (N.D. 1984) ("['Detriment'] means giving up something which immediately prior thereto the promissee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." (quotation marks omitted)). Finally, even if it is assumed that a new contract was created, there is no reason to believe it would have relieved Nickeson of any liability or that R & J would not have been a party to it, as a partnership can be bound by a contract even if less than all of the partners had knowledge of it. *See* N.D. Cent. Code § 45-15-01(1) ("An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on . . . business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."); S.D. Codified Laws § 48-7A-301(1) (same). Nickeson's argument

11

regarding modification of the LFAs or creation of a new contract is without merit.

   5.   *Damages, attorney fees, and costs*

On June 20, 2007, MCC Dairy entered into an agreement with Plaintiffs wherein MCC Dairy agreed to pay to Plaintiffs installments ultimately totaling $1,629,413.65. That amount represents the cost of cattle, plus interest, that MCC Dairy received from R & J but that were owned by Plaintiffs.[6] Plaintiffs applied $349,450.31 of the settlement sum to R & J's obligations to Central, and R & J's debt to Central was satisfied when MCC Dairy paid a final installment on October 16, 2008.

Plaintiffs applied $1,279,963.34 of the settlement sum to R & J's obligations to Genex. Genex asserts that, as of June 5, 2009, R & J still owed it $1,533,948.10, consisting of $983,182.77 in principal, $23,760.75 in insurance fees, $19,140.00 in program fees, and $507,864.58 in service fees. Genex contends that, under the terms of the LFAs, service fees continue to accrue in the amount of $324.24 per day. To establish the amounts claimed, Genex submits spreadsheet-type statements documenting the various charges and the affidavit of an agent involved in managing R & J's accounts attesting to the amounts owed. Nickeson argues that the various fees claimed by Genex are "exorbitant and need[] clarification," but he does not specifically identify or explain any inaccuracies. The Court concludes that Genex is entitled summary judgment for damages in the amount of $1,533,948.10. *See Walling Chem. Co. v. Bigner*, 349 N.W.2d 647, 651 (S.D. 1984) ("Damages must be proved with a reasonable degree of certainty . . .").

---

[6]   Nickeson speculates that the settlement amount does not fully represent the value of the cattle that MCC Dairy received from R & J. The significance of Nickeson's argument is unclear. Plaintiffs do not appear to have been required to seek recovery from the recipients of their cattle, such as MCC Dairy, rather than from R & J, and the Court discerns no way in which the settlement might impede R & J from seeking recovery of any additional sums owed by MCC Dairy on the cattle it received.

Plaintiffs also seek recovery of attorney fees in the amount of $163,083.36 and costs of $7,024.92. These amounts include sums incurred in litigating both the present action and in defending third-party complaints served on Plaintiffs in the South Dakota partnership dissolution action. The LFAs provide that the "prevailing party" in "any action, arbitration, or proceeding to enforce any provision of [the LFAs], or for damages by reason of an alleged breach of any provision of [the LFAs]" may recover "from the other party all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party in connection with such action or proceeding." As the prevailing party in the present action, Plaintiffs may recover the costs and fees incurred in litigating it. With respect to the South Dakota action, the claims against Plaintiffs were dismissed without prejudice. Plaintiffs fail to identify the grounds for the decision of the South Dakota court, and, without more information about the reasons for the dismissal and without any argument about the meaning of "prevailing party" as that phrase is used in the LFAs, the Court is unable to determine whether Plaintiffs qualify as prevailing parties in the South Dakota action. *Cf. Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 929-30 (7th Cir. 2000) ("Sometimes victory on a jurisdictional point merely prolongs litigation. A defendant may persuade the court that the plaintiff has sued too soon, or in the wrong court, or failed to jump through a procedural hoop. Then the dispute will continue later, or elsewhere, and it remains to be seen who will prevail."). Because Plaintiffs fail to differentiate between costs and fees incurred in the present action and costs and fees incurred in the South Dakota partnership dissolution action, the Court denies Plaintiffs' motion with respect to attorney fees.

B. **Default judgment against R & J**

Plaintiffs seek a default judgment against R & J. *See* Fed. R. Civ. P. 55(b). Nickeson opposes the motion. R& J has not appeared in this action, *see Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (indicating that a partnership may appear in federal court only through a licensed attorney), and there is no reason to believe that R & J will ever answer and defend. R & J has no apparent defenses, other than the defenses that are raised by Nickeson on his own behalf and that are discussed above. Accordingly, the Court grants Plaintiffs' motion for default judgment to the extent consistent with the Court's determinations, discussed above, regarding damages, attorney fees, and costs.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Entry of Default Judgment Against R & J Dairy [Docket No. 60] is GRANTED respect to damages for breach of the LFAs and DENIED with respect to attorney fees and costs.

2. Plaintiffs' Motion for Summary Judgment Against Richard E. Millner and James L. Nickeson [Docket No. 66] is GRANTED with respect to damages for breach of the LFAs and DENIED with respect to attorney fees and costs.

3. R & J, Millner, and Nickeson are jointly and severally liable to Genex for damages in the amount of $1,533,948.10 as of June 5, 2009, plus additional service fees accruing in the amount of $324.24 per day.

4. In the event that the parties are unable to reach an agreement regarding the unresolved matters in this case, the parties are granted leave to file additional dispositive motions on or before September 18, 2009.

Dated: August 14, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge